**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTON TORNOWSKE, | ) | |
| | ) | Civil Action No. 08 - 502 |
| Petitioner, | ) | |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| COMMONWEALTH OF PA; THE | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF PENNSYLVANIA; THE DISTRICT | ) | |
| ATTORNEY OF THE COUNTY OF | ) | |
| WESTMORELAND, | ) | |
| | ) | |
| Respondents. | | |

**MEMORANDUM OPINION AND ORDER**

Petitioner, Anton Tornowske, a state prisoner incarcerated at the State Correctional Institution at Waymart, Pennsylvania, challenges his sentence of from ten to twenty years for his conviction of voluntary manslaughter on February 14, 2001 in the Court of Common Pleas of Westmoreland County, Pennsylvania. Specifically, Petitioner asserts that the Trial Court substantially and unlawfully departed from the Pennsylvania Sentencing Guidelines in imposing the statutory maximum of incarceration. For the reasons set forth below, the Petition will be denied.

**A. Relevant Facts and Procedural History**

On February 10, 2000, Petitioner was charged with a general count of homicide pursuant to 18 Pa.C.S.A. §2502 following the shooting death of his wife. On February 14, 2001, Petitioner was found not guilty of murder, but was found guilty of voluntary manslaughter pursuant to 18 Pa.C.S.A. §2503. Voluntary manslaughter is a felony of the first degree under Pennsylvania law. 42 Pa. Cons. Stat. § 2503(c). The maximum sentence for a felony of the first degree is twenty years.

42 Pa. Cons. Stat. § 1103(1).  Pursuant to Pennsylvania's Sentencing Guidelines, 204 Pa.Code § 303.1 *et seq.* the effective guideline for Petitioner was sixty (60) to seventy-two (72) months incarceration.  On April 24, 2001, the Trial Court sentenced Petitioner to 10 to 20 years imprisonment on the charge of voluntary manslaughter, a period well within the statutory limit of twenty years, but outside the range recommended by the Guidelines.  In sentencing Petitioner,  the Trial Court specifically explained that he considered the nature of the crime, the interests of punishment and rehabilitation, the interests of society and the Petitioner's lack of remorse (doc. no. 13-3).  In his direct appeal, Petitioner alleged, among other issues, that the sentence was excessive.  By an Opinion dated July 11, 2002, the Superior Court denied Petitioner's appeal and affirmed the judgment of sentence (doc. no. 13-5, pp.12-26).  Petitioner filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied by Order dated July 15, 2003.

On June 24, 2004, Petitioner filed a Petition under the Pennsylvania Post-Conviction Relief Act (PCRA) raising the issue of the excessive sentence.  On September 25, 2006, the PCRA court dismissed the Petition.  Petitioner filed an appeal of the denial of his Post-Conviction Relief Act to the Superior Court of Pennsylvania. In his appeal, Petitioner solely raised the issue that his appellate counsel on his application for allowance of the appeal to the Pennsylvania Supreme Court was ineffective in failing to cite the Pennsylvania case of Commonwealth v. Mouzon, 812 A.2d 617 (Pa.2002).  By order dated September 5, 2007, the Superior Court dismissed Petitioner's appeal as untimely (doc. no. 13-6, p. 29-38).

On April 7, 2008, Petitioner filed a timely *pro se* petition for writ of habeas corpus. Through counsel, Petitioner filed an amended petition on June 11, 2008 (doc. no. 5).  The amended petition alleges that the trial court substantially and unlawfully departed from Pennsylvania sentencing guidelines in imposing the statutory maximum sentence of incarceration.

## B. Availability of Habeas Corpus Relief

Petitioner is not entitled to habeas corpus relief unless he can demonstrate that he has been denied his federal constitutional rights. In this regard, a state prisoner may seek federal habeas corpus relief only if he is in custody in violation of the Constitution or federal law. Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). Thus, a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Engle v. Isaac, 456 U.S. 107, 119 (1982). Violations of state law or procedural rules alone are not a sufficient basis for providing federal habeas corpus relief. *Id.* Thus, a writ of habeas corpus is not available when a state prisoner merely alleges that something in the state proceedings was contrary to general notions of fairness or violated some federal procedural right unless the Constitution or other federal law specifically protects against the alleged unfairness or guarantees the procedural right in the state courts.

Generally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus. Wooten v. Bomar, 361 U.S. 888 (1959). As such, a federal court normally will not review a state sentencing determination that falls within the statutory limit, Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984), as the severity of a sentence alone does not provide a basis for habeas relief. Smith v. Wainwright, 664 F.2d 1194 (11th Cir. 1981) (holding that a sentence imposed within the statutory limits can not be attacked in habeas proceeding). *Accord* Gleason v. Welborn, 42 F.3d 1107, 1112 (7th Cir. 1994) (internal citation omitted), *cert. denied*, 514 U.S. 1109 (1995); Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), *cert. denied*, 488 U.S. 926 (1988); Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986); United States v. Myers, 374

F.2d 707 (3d Cir. 1967).[1]  Thus, unless an issue of constitutional dimension is implicated in a sentencing argument, this Court is without power to grant habeas relief.  United States v. Addonizio, 442 U.S. 178, 186 (1979) (noting that a criminal sentence was not subject to collateral attack unless the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair).

A sentence violates the Eighth Amendment of the Constitution only when it is extreme and "grossly disproportionate to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) ("The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime.") (citation omitted).  Moreover, it is firmly established that mere discrepancy in the sentences imposed upon two similarly-situated individuals does not constitute a violation of equal protection. Dorszynski v. United States, 418 U.S. 424 (1974); United States v. Palma, 760 F.2d 475 (3d Cir. 1985).

In the case at bar, Petitioner complains that the sentence imposed in his case pursuant to Pennsylvania's indeterminate sentencing scheme, which was within the statutory maximum but exceeded the aggravated range of the Sentencing Guidelines, violates the Sixth Amendment to the United States Constitution in light of the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004).  This issue was squarely addressed in 2007 by the Pennsylvania Supreme Court as authored by the late Chief Justice Ralph J. Cappy in Commonwealth v. Yuhasz, 923 A.2d 1111 (Pa. 2007) as follows[2].

---

1  *See also* Medina v. Artuz, 872 F. Supp. 1258 (S.D.N.Y. 1995) (no showing that the sentence was grossly inappropriate to the crime so as to present a federal constitutional question).

2  It is not usually this court's policy to extensively quote from other opinions. However, the opinion of the Pa. Supreme Court in this case so directly and excellently analyses this issue that

This Court issued a limited grant of allocatur on one question:

Whether the sentence imposed in this case pursuant to Pennsylvania's indeterminate sentencing scheme, which was within the statutory maximum but exceeded the aggravated range of the Sentencing Guidelines, violates the Sixth Amendment to the United States Constitution in light of the U.S. Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), because the sentencing judge relied upon conduct not admitted in petitioner's guilty plea?

As this is a pure question of law, our standard of review is *de novo*. Our scope of review is plenary.

Appellant argues that while the general scheme of Pennsylvania's indeterminate system is constitutional, the Sentencing Guidelines run afoul of the Sixth Amendment to the extent that they allow a sentencing judge to depart from the recommended ranges based on facts not found by a jury or admitted in a plea. He claims that the standard sentencing range, not the statutorily-prescribed maximum sentence, is the actual "statutory maximum" under Blakely for Sixth Amendment purposes because it is the maximum sentence that a defendant may receive without additional fact-finding by the judge. Like the defendant in Blakely, he argues that he was entitled to no greater than the standard range under the Sentencing Guidelines. Thus, in order to sentence him beyond the range recommended in the Guidelines, the facts supporting the enhancement must be found by a jury. Because the factors explained by the judge went beyond those admitted to in his plea, he received more punishment than he was entitled to based upon judicially-determined facts. Thus, he contends that his sentence is illegal and should be vacated.

The Commonwealth responds that the trial court did not violate Appellant's Sixth Amendment rights by sentencing him outside of the recommended range of the Sentencing Guidelines. The sentence actually imposed was within the ten-year statutory maximum sentence for felonies of the second degree. The Commonwealth points out that in Pennsylvania's indeterminate, discretionary sentencing scheme, the statutory maximum is the guidepost for Blakely standards. Any enhancement made by a trial

---

the undersigned believed that an attempt to restate the opinion would only dilute the reasoning. It is therefore quoted at length herein.

judge will affect only the minimum sentence, not the statutory maximum. As such, this does not implicate the concerns addressed in Blakely. The Commonwealth also argues that the United States Supreme Court in Blakely specifically declared that the Sixth Amendment has no impact on indeterminate sentencing schemes. Further, in United States v. Booker, 543 U.S. 220 (2005), the Court held that sentencing schemes that are merely advisory will not violate the Sixth Amendment as explained by Blakely. As such, the Commonwealth urges this Court to affirm the trial court's judgment of sentence.

Before proceeding to the analysis of the relevant precedent of the United States Supreme Court, it is important to set forth the terminology employed in describing sentencing systems. First, sentencing systems are either determinate or indeterminate. Indeterminate systems feature discretionary parole release, whereas determinate schemes do not. In indeterminate systems, the judge most often will impose a sentence with two numbers, the earliest time that the defendant will be eligible for discretionary parole release and the latest date upon which the defendant may be released from confinement or parole supervision. Determinate sentences take the form of a single release date.

Sentencing schemes may also be discretionary or nondiscretionary. A discretionary system permits the judge to choose the sentence from a statutory range of punishments, whereas nondiscretionary systems require the imposition of a particular legislatively determined sentence for the particular type of offense.

Finally, sentencing schemes may be guided or unguided. An unguided system leaves the choice of which sentence to impose to the judge, bounded only by the statutory maximum. Guided systems employ sentencing guidelines that set forth ranges of sentences crafted to the type and nature of the offense. Further, sentencing guidelines may be mandatory (sometimes referred to as presumptive), requiring a judge to sentence within the prescribed range unless specified factors are present, or voluntary, providing only advisory guidance posts as to what sentence to impose.

In recent years the United States Supreme Court has addressed a series of cases exploring the interplay between the Sixth Amendment's right to a jury trial and the various sentencing schemes employed by the states and the federal government. The first case in this line was Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi the Court struck down a portion of the New Jersey hate

crimes statute that provided for an enhancement of a criminal sentence if a trial judge found, by a preponderance of the evidence, that the defendant committed the crime with the purpose to intimidate a person or group based on enumerated characteristics, such as race. Apprendi was charged with a variety of crimes for discharging a gun into the home of an African-American family that had recently moved into his neighborhood. He pled guilty to two counts of possession of a firearm for an unlawful purpose and one count of unlawful possession of an antipersonnel bomb. These crimes carry a statutory penalty range of 5 to 10 years and 3 to 5 years, respectively. At sentencing, the judge found by a preponderance of the evidence that Apprendi's crimes were motivated by a racial bias. As such, pursuant to the hate crime enhancement, the judge sentenced Apprendi to 12 years of imprisonment for one count of possession of a firearm for an unlawful purpose and shorter concurrent sentences for the other two charges.

On appeal, the United States Supreme Court overturned Apprendi's sentence and struck down the portion of New Jersey's hate crimes law that allowed the enhancement of a defendant's penalty based on judicial fact-finding. The Court explained: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Thus, any factor, except for the existence of a prior conviction, that increases an individual's potential maximum sentence is within the purview of the jury, not the court, to establish.

Four years later, in Blakely v. Washington, 542 U.S. 296 (2004), the United States Supreme Court applied its holding in Apprendi to a case in which, as here, the defendant was sentenced above the range outlined by the sentencing guidelines but within the prescribed statutory maximum penalty. Blakely was charged with first degree kidnapping for the abduction of his estranged wife. He entered into a negotiated plea of guilty to the lesser charges of second degree kidnapping involving domestic violence and use of a firearm, felonies carrying a statutory maximum penalty of ten years in prison. Washington's sentencing guidelines provided a standard range of 49 to 53 months. A judge was permitted under the guidelines to impose a sentence above the standard range only if he found "substantial and compelling reasons justifying an exceptional sentence." Blakely, 542 U.S. at 299 (quoting Wash. Rev. Code Ann. § 9. 94A.120(2)). The guidelines provided a non-exhaustive list of factors that justified a

departure from the recommended range. Further, any factor used in aggravation could not be a factor already considered in calculating the standard range. *Id*.

The judge imposed a sentence of 90 months, 37 months beyond the standard maximum recommended by the sentencing guidelines. He justified the sentence on the ground that the petitioner had acted with "deliberate cruelty," a statutorily-enumerated ground for aggravation. Blakely, 542 U.S. at 300. Blakely appealed, arguing that the judge violated Apprendi by enhancing his sentence based on "deliberate cruelty," a factor which he did not admit in his plea. Blakely contended that lacking such admission, it is the jury, not the judge that must establish aggravating factors. The State of Washington countered that Apprendi was not implicated as the sentence imposed was still under the statutory maximum of ten years in prison.

The Supreme Court struck down the sentence as violative of the Sixth Amendment as interpreted by Apprendi. The Court held that the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. Blakely, at 303. Thus, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id*. at 303-04. Under the Washington guidelines, the judge was required to impose a sentence within the prescribed range unless there were substantial and compelling reasons to depart therefrom. Thus, the relevant statutory maximum under the Washington guidelines for Sixth Amendment purposes was the top sentence prescribed by the sentencing guidelines. The Court explained that the sentence violated Apprendi because absent the judicial finding of deliberate cruelty, the trial court was required by Washington's sentencing guidelines to impose a sentence within the prescribed range. By exceeding the guidelines' range, the court effectively imposed a sentence beyond the statutory maximum.

Most recently, the Supreme Court addressed the constitutionality of the federal sentencing guidelines in United States v. Booker, 543 U.S. 220 (2005). The federal sentencing guidelines were nearly identical to the Washington guidelines addressed in Blakely. Like the Washington guidelines, the federal government employed a determinate sentencing scheme wherein the guidelines prescribed a range from which the judge was required to choose the sentence. Departure from the prescribed range was only permitted if

the judge found aggravating or mitigating factors not already considered by the guidelines by a preponderance of the evidence. The government contended, however, that despite the similarities, Blakely should not apply as the federal guidelines were promulgated by the Federal Sentencing Commission, rather than Congress.  The majority explained that this distinction has no constitutional significance as to the Sixth Amendment issue.  Booker, 543 U.S. at 237.  The Court concluded that the federal guidelines did not pass constitutional muster.

...

In its substantive opinion, the Court held that like the Washington guidelines struck down in Blakely, the federal guidelines violated the Sixth Amendment.  The Court explained that merely allowing a judge to depart from the range  specified by the sentencing guidelines does not in itself create a constitutional problem, provided that the departure is within the statutory maximum sentence.  Booker, 543 U.S. at 234.  The problem with the federal guidelines was that in most cases, as a matter of law, departure is not permitted. Id. In such cases, the district court was bound to impose a sentence within the range specified by the guidelines.  *Id*.  Due to the mandatory nature of the federal guidelines, the effective statutory maximum for Apprendi purposes was the maximum range prescribed by the guidelines, not the statutory maximum of the offense.  Thus, like in Blakely, the federal guidelines were found to be in violation of the Sixth Amendment inasmuch as they allowed a judge to depart from the prescribed sentencing range based upon judicially-established facts.

The Court explained that the key to its determination was that the federal guidelines were mandatory. It stated:

> If the guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range.  Indeed, everyone agrees that the constitutional issues presented in these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented

(the question of remedy) possible.  For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

...

Pennsylvania's statutory sentencing scheme is indeterminate, advisory, and guided.  In imposing a sentence, the judge is directed to give two numbers representing the minimum and maximum period of incarceration:

(a) General rule.-In imposing a sentence of total confinement the court shall at the time of sentencing specify any maximum period up to the limit authorized by law and whether the sentence shall be commenced in a correctional institution or other appropriate institution.

(b) Minimum sentence.-The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.

42 Pa.C.S. § 9756(a), (b) (emphasis added).  In most cases, the defendant is eligible for parole release at the discretion of the Parole Board after the expiration of the minimum sentence.   In no circumstance may the sentence imposed go beyond the statutory maximum sentence.

Pennsylvania has a guided sentencing system, requiring a judge to consider the guidelines promulgated by the Pennsylvania Commission of Sentencing in choosing a minimum sentence.

.       .       .       .       .       .       .       .       .       .       .

The Sentencing Guidelines, located at 204 Pa.Code § 303 et seq. , recommend ranges of minimum sentences based on the type of offense, the defendant's prior criminal history, and a variety of aggravating and mitigating factors.  The standard recommended minimum sentence is determined by the intersection of the defendant's prior record score and the offense gravity score on the Basic Sentencing Matrix. 204 Pa.Code § 303.16.  The Guidelines further recommend that if the court determines that aggravating or mitigating circumstances are present, it may impose a sentence that

is a specified amount of time greater than the upper limit of the standard range or less than the lower limit of the standard range. 204 Pa.Code § 303.13.

It is well established that the Sentencing Guidelines are purely advisory in nature. As this Court explained in Commonwealth v. Sessoms, 516 Pa. 365, 532 A.2d 775, 780-81 (1987), the Guidelines do not alter the legal rights or duties of the defendant, the prosecutor or the sentencing court. The guidelines are merely one factor among many that the court must consider in imposing a sentence. Sessoms, 532 A.2d at 781. Consequently, this Court explained:

> The defendant has no "right" to have other factors take pre-eminence or be exclusive; therefore, to have the guidelines considered, whatever they may provide does not change his rights. Likewise, the prosecutor has no "right" to have a particular sentence imposed. Most important, the court has no "duty" to impose a sentence considered appropriate by the Commission. The guidelines must only be "considered" and, to ensure that such consideration is more than mere fluff, the court must explain its reasons for departure from them.

Id. Likewise, we explained in Commonwealth v. Mouzon, 571 Pa. 419, 812 A.2d 617, 621 (2002) (plurality), that despite the recommendations of the Sentencing Guidelines, "the trial courts retain broad discretion in sentencing matters, and therefore, may sentence defendants outside the Guidelines." The only line that a sentence may not cross is the statutory maximum sentence.

As it is evident that Pennsylvania's Sentencing Guidelines are merely advisory, the United States Supreme Court's holding in Booker makes clear that they do not violate the Sixth Amendment. The Court in Booker explained, "[i]f the guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." 543 U.S. at 233. Pennsylvania's Guidelines do just that. They set forth a series of recommendations that based on the type of crime, the defendant's criminal history, and the existence of any aggravating or mitigating factors, suggest a range of minimum sentences. As the range is merely a suggestion, it avoids the constitutional problems encountered by the sentencing schemes reviewed in Booker and Blakely. Thus, the maximum

> sentence for Apprendi purposes is the statutory maximum, not the maximum recommendation of the Sentencing Guidelines.  Because the statutory maximum is the polestar for Sixth Amendment purposes, a judge may impose a sentence outside the Guidelines without unconstitutionally increasing the punishment for a crime based on judicially-determined facts as long as the maximum sentence imposed does not exceed the statutory limit.
>
> As Appellant in this case was sentenced within the statutory maximum sentence provided by 18 Pa.C.S. § 106(b)(3), the fact that the trial court considered material not admitted in Appellant's plea in departing from the sentencing guidelines is constitutionally irrelevant. Thus, the judgment of sentence is affirmed.

Commonwealth v. Yuhasz, 923 A.2d 1111 at 1114-1119 (Pa. 2007) (some citations and footnotes omitted).


As the Pennsylvania Supreme Court made clear in May of 2007, a whole year before Petitioner filed his Amended Petition, the constitutional infirmity encountered in Blakely does not apply to the sentencing scheme applicable in Pennsylvania.  Thus, Petitioner's claim is without merit.  Moreover, contrary to Petitioner's claim, he did receive the benefit of being convicted of voluntary manslaughter as the maximum sentence for that crime in Pennsylvania is twenty years. Had Petitioner been found guilty of first or second degree murder, he would have been sentenced to the mandatory sentence of life without parole.  Consequently, Petitioner has failed to show that he is entitled to habeas corpus relief with respect to his sentencing claim.  An appropriate order follows.

### C. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate

of appealability (COA) has been issued.  A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C.  § 2254(c)(2).  Applying this standard to the instant case, the court concludes that Petitioner has failed to demonstrate any violation of his constitutional rights.  Accordingly, a certificate of appealability will be denied.

**AND NOW**, this 15h day of January, 2010;

**IT IS HEREBY ORDERED** that the Amended Petition for Writ of Habeas Corpus (doc. no. 5) is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

cc:      all counsel